## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

KHANISA DARBY,        :
     **Plaintiff,**     :
            :
    **v.**        :   **Civil No. 24-cv-05421**
            :
**120 NORTHAMPTON, LLC,** *et al.*,   :
     **Defendants.**   :

---

### MEMORANDUM

**SCHMEHL, J.** */s/ JLS*           **SEPTEMBER  26, 2025**

  In the words of the *pro se* Plaintiff, "[t]his action seeks money damages under 42 U.S.C. § 1983 due to a county sheriff, deputy sheriff, prothonotaries, and multiple attorneys' participation in a private party's unlawful deprivation of the Plaintiff's commercial leasehold and personal property in pursuit of a void *ab initio* confessed judgement. The Plaintiff alleges that the Defendants acted under color of state law and violated Plaintiff's procedural and substantive rights to due process under the Fourth and Fourteenth Amendments to the Constitution of the United States when her right to the hearing required by Pennsylvania's Rules of Civil Procedure governing confessions of judgment was obstructed. The Plaintiff also brings twelve state law claims pursuant to this court's supplemental jurisdiction." ECF 69 at ¶ 1.

  The Second Amended Complaint ("SAC")[1] consists of 81 pages, over 400 allegations and 13 separate counts. It names 21 Defendants. The SAC alleges that

---

[1] Plaintiff filed her original Complaint on October 9, 2024. She subsequently filed an Amended Complaint on October 28, 2024. [ECF 11.] Many of the Defendants filed motions to dismiss. On January 23, 2025, Plaintiff filed First Motion for Leave to Amend First Amended Complaint. [ECF 64.] By Order dated

Plaintiff is a resident of Piscataway, New Jersey and operated "The Pudding Bar" located at 118 Northampton Street, Easton, Northampton County, Pennsylvania (the "Property"). *Id*. at ¶ 4.

The SAC alleges that "Defendant 120 Northampton, LLC" is "the landlord/property owner and holder of the deed to the building housing the subject premises that is the Plaintiff's commercial leasehold," "Defendant Post Road Management, LLC … is Owner of Defendant 120 Northampton, LLC, and Property Manager of the subject premises," and "Defendant Borko Milosev is … sole owner of 120 Northampton, LLC" and "acted as authorized representative for Defendant 120 Northampton, LLC in the underlying state-court confession of judgment proceedings." *Id*. at ¶¶ 5-7.

The SAC alleges that Defendant Steven Todd Williams, Esq. ("Williams"), represented 120 Northampton, LLC in the underlying confession of judgment action. Defendant Law Office of Steven T. Williams, LLC, d/b/a Waldron & Williams is the law firm where Attorney Williams is employed. Defendant JJ Waldron, LLC is a law firm included as an affiliate of the firms which operate under the name "Waldron & Williams." *Id*. at ¶¶ 8-10.

Plaintiff alleges that Defendant Matthew James Deschler, Esq. ("Deschler") is an attorney who also acted as counsel for the Defendant 120 Northampton, LLC in the underlying state-court confession of judgment proceedings. He practices as an attorney for Defendant Shay, Santee, Kelhart & Deschler, LLC. *Id.* at ¶¶ 11-12.

---

February 6, 2025, the Court, out of an abundance of caution, granted Plaintiff's motion. [ECF 68.] The Second Amended Complaint was docketed on February 6, 2025.  [ECF 69.]

Plaintiff alleges that Defendant Kathleen A. Nansteel ("Deputy Nansteel") is a Deputy Sheriff employed by Northampton County, Pennsylvania. Defendant Sheriff Richard Johnston ("Sheriff Johnston") is the County Sheriff employed by Northampton County, Pennsylvania. Both are sued in their official and individual capacities. *Id.* at ¶¶ 13-14.

Defendant Holly Ruggiero ("Ruggiero") is the Prothonotary employed by Northampton County, Pennsylvania. Defendant Melissa Shoemaker ("Shoemaker") is a Deputy Prothonotary/Court Clerk employed by Northampton County, Pennsylvania. Both are sued in their official and individual capacities. *Id*. at ¶¶ 15-16.

Defendants Samuel E. Cohen, Esq., ("Cohen") and Constance K. Nelson, Esq, ("Nelson") are attorneys employed with the Defendant law firm Gross McKinley, LLP which represented Plaintiff in the underlying confession of judgment action. *Id*. at ¶¶ 17-19.

Defendant Matthew B. Weisberg, Esq.("Weisberg"), Defendant, Gary Schafkopf, Esq. ("Schafkopf"), Defendant L. Anthony DiJiacomo, III, Esq. ("DiJiacomo") are attorneys employed with the Defendant law firm Weisberg Law P.C which represented Plaintiff in the underlying confession of judgment action. *Id*. at ¶¶ 20-23.

Defendant Zachary Zawarski, Esq. ("Zawarski") is an attorney employed with the Defendant law firm Zachary Zawarski, LLC which also represented Plaintiff in the underlying confession of judgment action. *Id*. at ¶¶ 24-25.

With the exception of Defendants Cohen, Nelson and the law firm of Gross McKinley, all of the Defendants have filed various motions to dismiss the SAC. [ECF 70, 75, 76, 77, 78, 81.]

Plaintiff alleges that in 2018, she "and a limited business partner … executed a commercial lease agreement for legal possession of the subject premises that is 118 Northampton Street, Easton, Northampton County, Pennsylvania with Defendant 120 Northampton, LLC, represented by Borko Milosev." ECF 69 at ¶ 26. The lease was for an initial term of eight years with a commencement date of January 1st, 2019, terminating on December 31st, 2026**.** Plaintiff alleges that a dispute arose during the leasehold wherein "Defendant Borko Milosev, reneged on [a] fully working HVAC agreement" that resulted in a re-execution of the lease terms, which Plaintiff contends included "an invalid inconspicuous confession of judgment clause" of which Plaintiff claims she was unaware. See id. ¶¶ 28, 36-39.

"After a dispute, the Plaintiff agreed to pay an additional one hundred dollars ($100.00) each month for the full length of the lease, to receive a fully working HVAC from the Defendant Borko Milosev, bringing the total monthly rental payment to one thousand six hundred dollars ($1,600.00) each month from the one thousand five hundred dollars ($1,500.00) initially agreed to, with a three percent (3%) annual increase." *Id*. at ¶ 37. This was done pursuant to a Lease Amendment that was executed, again, between Borko Milosev as a representative for 120 Northampton, LLC, Khanisa Darby, and the limited partner, Marko Golubovic on February 13th, 2019, with the termination date remaining of December 31st, 2026. *Id*. at 38. According to Plaintiff, "the Lease Amendment did not include a confession of judgment clause, nor made any mention of it**."** *Id*. at 39. However, the Lease Amendment does contain a clause that states, "The parties hereby affirm that all other terms and conditions of the Lease, except as modified herein, shall remain in full force and effect." ECF 69-1, p. 20.

4

The SAC alleges that the Property "was plagued by repeated maintenance issues" and sets forth a list of alleged deficiencies. *Id*. at ¶ 44. Plaintiff further alleges that "[d]uring the ongoing dispute over the maintenance and major structural concerns, the Plaintiff withheld two months of rent totaling . . $3,278.18." *Id*. at ¶ 47. She alleges that she reported the Property to the City of Easton's Code Enforcement on five separate occasions in 2021-2022. *Id*. at ¶ 46. She alleges that "after the Plaintiff reported the building to code enforcement, … 120 Northampton, LLC, and Borko Milosev by and through their attorney Steven Todd Williams, Esq., filed [on March 24, 2022] a Confession of Judgment Complaint[2] for Money and Ejectment against the Plaintiff, Khanisa's LLC and Marko Golubovic in the Northampton County Court of Common Pleas (Docket No. C-48-CV-2022-01773)." *Id*. at ¶¶ 47-49; ECF 69-1, pp. 23-26. The Confession of Judgment Complaint was served upon the Plaintiff by Deputy Nansteel at the commercial leasehold on April 1st, 2022. *Id*. at ¶ 43. "The Complaint in Confession of Judgment was for Money, including accelerated rent, and in Ejectment for Possession of Real Property." *Id*. at ¶ 50. "The monetary judgment was entered and indexed against the Plaintiff, Khanisa's LLC, and Marko Golubovic, each in the amount of one hundred sixteen thousand, two hundred forty-seven dollars and fifty-four cents ($116, 247.54)." *Id*. at ¶44.

Plaintiff retained the law firm of Gross McGinley, LLP by and through Attorneys Cohen and Nelson. On April 25, 2022, Cohen filed in the Court of Common Pleas of Northampton County a "Petition to Strike/Open Confessed Judgment." ECF 69-1, pp.

---

[2] The Lease contained a Confession of Judgment clause in mostly capital letters which stated, *inter alia*, that in the event of a default by the tenant, the Landlord may cause judgment to be entered for all unpaid rent as well as all future rent due under the Lease as well as the ejection of the tenant form the premises. ECF 69-1, pp. 12-13.

29-38. Included in the Petition was a request to stay execution of the March 24, 2022 Judgment pending resolution of the Petition to Strike. *Id*. at pp. 37-38. Plaintiff alleges that Cohen "filed the Petition to Strike/Open with the state court Prothonotary, without presenting the Petition in Motions Court or Ex Parte." *Id*. at ¶ 53. Plaintiff also alleges that the "Petition to Strike/Open did not include nor have attached a proposed Rule-to-Show-Cause Order." *Id*. at ¶ 54. On April 25, 2022, Cohen also filed "Defendants' Answer to the Complaint with New Matter and Counterclaim." *Id*. at ¶¶ 71-77. For the next two months Cohen and Williams filed Answers and Replies. Id. at ¶¶ 60-62. On September 22, 2022, Williams filed with the Prothonotary of the Court of Common Pleas of Northampton County a Praecipe for Writ of Possession Upon a Confessed Judgment. ECF 69-2, pp. 2-3. Plaintiff alleges that the "Praecipe for Writ of Possession did not include a "Certification" Section pursuant to Pa.R.Civ.P. 2974.1 Praecipe for Writ of Possession." ECF 69 at ¶ 73.

On September 22, 2022, Prothonotary Ruggiero and Deputy Shoemaker, signed the Writ directing Sheriff Johnston, to "deliver possession of 118 Northampton Street, Easton, Pa.18042 to Northampton 120, LLC." ECF 69-2, p. 6. On September 28, 2022, Williams filed a "Certification Under Rule 2974.1 for Writ of Possession Upon a Confessed Judgment," certifying that "Notice pursuant to Rule 2973.2 has been served at least 30 days prior to the filing of the Praecipe as evidenced by a Return of Service filed of record (copy attached)." *Id*., p. 26.

On September 28, 2022, Sheriff Johnston issued a Sheriff's Notice of Possession, stating that the "premises located at KHANISA'S 118 NORTHAMPTON STREET, EASTON, PA 18042 . . . . must be vacated by 10:00 a.m. on FRIDAY,

OCTOBER 28, 2022. Failure to comply may necessitate the removal of your belongings at that time and at your expense." ECF 69-2, p. 5. Plaintiff deemed this to be an "illegal lockout." ECF 69 at ¶¶ 78, 82, 87, 97-99.

The Sheriff's Return of Service entry for September 28, 2022 states "Notified Attorney/Plaintiff that possession has been scheduled for 10:00 a.m. on Friday, October 28, 2022. Notice of Possession e-mailed this date to SWilliams @ ww-legal.com." ECF 69-3, p. 2. The entry for October 6, 2022 states "Sheriff Richard Johnston, In and of the County of Northampton and being duly sworn according to law, deposes and says a true and attested copy of the requested writ of possession were mailed via ordinary mail to the within named defendant, Khanisa Darby t/a Khanisa's, at 118 Northampton Street, Easton, Pa. 18042.The Certificate of mailing herewith attached and made part of this return." *Id*. An entry for October 11, 2022 states "Deputy Kathy Nansteel, being duly sworn according to law, deposes and says that the writ of possession, notice of possession and legal description were posted upon the property located at 118 Northampton Street, Easton, Pa. 18042." *Id*. In another entry for October 11, 2022, Deputy Sheriff Nansteel swore that "the Writ of Execution and Notice were not served on Khanisa Darby at 118 Northampton Street, Easton, Pa. [Khanisa Darby] was not found at given address. Moved to new location 27 N. 7th Street, Allentown, Pa." *Id*. On October 28, 2022, Deputy Sheriff Nansteel swore that "the eviction was completed and possession of the Property ….was delivered to the Plaintiff [Veronica Muniz, Community Manager/Rock St. Gardens]." ECF 69-3, p. 3.

On October 27, 2022, Nelson filed a motion to withdraw as counsel for Plaintiff. On November 17, 2022, the Common Pleas Court granted the motion to withdraw. On

January 26th, 2023, the Plaintiff, by email, informed Matthew B. Weisberg Esq., Gary Schafkopf, Esq., and L. Anthony DiJiacomo, III Esq., of her receipt of a Notice of Presentation and Motion to Compel Discovery Answers to be presented in Motions Court on February 1st, 2023, by Williams. ECF 69 at ¶ 131. On January 30th, 2023, Attorneys Weisberg, Schafkopf, and DiJiacomo entered their appearance on the docket of the underlying confession of judgment action. *Id*. at ¶ 132

On April 12th, 2023, the Motion for Sanctions was granted in favor of 120 Northampton, LLC based on Plaintiff's alleged failure to respond to Defendant 120 Northampton's motion to compel discovery. *Id*. at ¶165. On April 12, 2023, Weisberg, Schafkopf, DiJiacomo presented a Motion for Leave to Withdraw from the case, which was granted. *Id*. at ¶166. On April 12, 2023, Senior Judge Munley affirmatively "terminated" Moving Defendants' representation of Plaintiff on April 12, 2023 (as opposed to simply granting leave to withdraw). On April 19, 2023, the law firm of Defendant Zachary Zawatski entered their appearance on behalf of Plaintiff**.** On June 7th, 2023, Zawarski sent an email and letter informing the Plaintiff he was terminating his representation and returned the Plaintiff's retainer and invoice payments in the amount of one thousand eight hundred seventy-five dollars ($1,875.00). *Id*. at ¶ 218. By Order dated September 7, 2023, Judge Samuel P. Murray of the Court of Common Pleas of Northampton County ordered that Plaintiff appear for her deposition by Williams on October 2, 2023, and that the Clerk place this matter on the Non-Jury list for December 4, 2023.

On October 6, 2023, Plaintiff appealed Judge Murray's Order to the Superior Court of Pennsylvania. On that same day, Plaintiff appealed the confession of judgment

to the Superior Court of Pennsylvania. ECF 69 at ¶ 260. On March 1, 2024, the Superior Court quashed Plaintiff's appeal from Judge Murray's Order as interlocutory. *Id*. at ¶ 261. On March 20, 2024, the Superior Court quashed the appeal from the confession of judgment on the basis that it was untimely and improper because an appeal does not properly lie from a confessed judgment. *Id*. at ¶ 261.

On April 1, 2024, Plaintiff filed a *pro se* "Petition to Strike Confession of Judgment" in the Court of Common Pleas of Northampton County, arguing that since the confessed judgment included an amount for accelerated rent and ejectment from the possession or real property, the confession of judgment was void *ab initio* under Pennsylvania law. *Id*. at ¶ 263. The Honorable Abraham P. Kassis responded to the Petition by issuing a Rule to Show Cause. On April 19, 2024, Plaintiff filed a Notice of Appeal from Judge Kassis' Order to the Superior Court of Pennsylvania, claiming that Judge Kassis should have simply ruled on Plaintiff's Petition to Strike rather than issue a Rule to Show Cause. On August 30, 2024, the Superior Court of Pennsylvania quashed Plaintiff's appeal from Judge Kassis' April 1, 2024 Rule to Show Cause as interlocutory.

On October 9, 2024, the Plaintiff filed this action. On October 10, 2024, Defendant 120 Northampton, LLC filed a "Motion to Amend Money Judgment Amount Entered by Confession Against Khanisa Darby t/a/ Khanisa's on March 24, 2022." In the Court of Common Pleas of Northampton County. *Id*. at ¶ 273. The Motion to Amend requested that the Common Pleas Court permit the Prothonotary "to 'modify' the confessed judgment for money, lowering it from $116,247.54 to $4,798.09 'out of an abundance of caution to ensure compliance with case law prohibiting confession of

judgment for both accelerated rent and for possession following a landlord's recovery of possession.'" *Id.* at ¶ 274.

On December 3, 2024, the Honorable Brian J. Panella of the Court of Common Pleas of Northampton County denied the Plaintiff's April 1, 2024 *pro se* Petition to Strike the Confessed Judgment and granted 120 Northampton LLC's Motion to Amend the Money Judgment. *Id.* at ¶ 288. The Order specified that the amount of the confessed judgment is amended and reduced from $116,247.54 to $4,798.09. *Id.* at ¶ 289. According to Plaintiff, although both Orders were entered on the docket, the Index still reflects the void amount of $116,247.54. *Id.* at ¶ 291. Plaintiff did not appeal either of Judge Panella's Orders to the Superior Court of Pennsylvania. It does not appear that the Court of Common Pleas of Northampton County ever held a hearing or ruled on the original Petition to strike the confessed judgment and request for a stay of execution of the confessed judgment that was filed by Cohen on April 25, 2022.

**COUNT I- FOURTH AND FOURTEENTH AMENDMENTS**

Plaintiff brings Count One against all Defendants pursuant to 42 U.S.C. §1983, alleging violations of the Fourth and Fourteenth Amendment as well as unlawful deprivation of property. Specifically, Plaintiff alleges:

> 293. The Plaintiff has maintained since the commencement of the underlying action that she did not voluntarily, intelligently, nor knowingly waive her right to due process and hearing.
>
> 294. Defendants 120 Northampton, LLC, and Steven Todd Williams, Esq., intentionally entered the void ab initio confessed judgment, in a manner that is prohibited in Pennsylvania, against the Plaintiff thereby invoking state statute.

295. Defendant Samuel E. Cohen, Esq., intentionally filed the Petition to Strike/Open without attaching and Presenting a Rule to show cause as is required by Pennsylvania's rules of civil procedure and local rules, committing the first overt act in the conspiracy to circumvent the hearing required after a debtor responds timely to a confession of judgment.

296. Defendant Steven Todd Williams, Esq., intentionally participated in and furthered the conspiracy when he broke the procedural rules by filing an Answer to the petition without being instructed to do so by the issuance of a Rule to Show Cause signed by a Judge.

297. Defendant Williams intentionally and recklessly continued to further the conspiracy by filing an Answer to the Counter Claim and New Matter, to which the Gross McGinley Defendants responded - also intentional and procedurally improper.

298. Defendants Williams, 120 Northampton, LLC, and Borko Milosev intentionally and overtly filed a procedurally improper Praecipe for Writ of Possession, lacking the "Certification" Section, with the intention of concealing from the record that a Petition to Open or Strike the judgment had already been filed, but a hearing had not been held.

299. The Defendant Prothonotaries intentionally accepted Defendant Williams' Answer to the Petition to Strike without a Rule to Show to Cause Order on the docket, accepted Defendant Williams' Praecipe for Writ of Possession although defective on its face, and issued a Writ of Possession, also not substantially in the form required by the Rules of Civil Procedure.

300. The Writ of Possession directed the Sheriff to take possession of the subject premises and all of the Plaintiff's property inside, without the issuance of a writ of execution, or possession order signed by a Judge, although they had already accepted the timely filing of a Petition to Strike/Open on the Plaintiff's behalf.

301. The Northampton County Sheriffs intentionally enforced the Writ of Possession without a writ of execution, returned possession of the subject premises to a representative with Defendant Post Road Management, LLC, and put an additional lock on the door the Plaintiff did not have a key to.

302. The Plaintiff was entitled to the subject premises until December 31st, 2026, by the Lease Amendment.

303. Defendant Constance K. Nelson, Esq., did not inform the Plaintiff of the impending lockout, claimed not to have received any prior notification, and attempted to "slip" a fraudulent document titled "Certification" signed by Defendant Steven Todd Williams claiming it was filed On September 28th, 2022, when the docket is completely void of this filing and the copy she presented to the Plaintiff was not stamped as filed by the Prothonotary.

304. Defendant Williams' "Certification" document in Defendant Nelson's possession, contains a certification section that is identical to the section that was missing from Defendant William's Praecipe for Writ of Possession pursuant to Pa.R.Civ.P. 2974.1.

305. The certification on this document was also missing paragraph five (¶5) of the required certification section, which informs the reader that a petition to open or strike the judgment was previously filed.

306. The Weisberg Law Defendants acted as subsequent counsel for the Plaintiff after the unlawful lockout and also intentionally failed to adjudicate the confessed judgment, maliciously and egregiously lied and concealed the void ab initio nature of the confessed judgment when asked, stonewalled, and utilized delay and manipulation tactics, to obstruct the Plaintiff's right to a prompt post-seizure hearing.

307. Defendant Zachary Zawarski, Esq. intentionally utilized delay tactics as well, maliciously concealed the void ab initio nature of the confessed judgment when asked, presented the Plaintiff with a fraudulent "Sheriff's Notice of Possession", intentionally and maliciously told the Plaintiff Defendant Steven Todd Williams Esq., had not submitted an Answer to the Petition when he did, and egregiously pushed the Plaintiff to conduct discovery before filing a Rule to Show Cause against the applicable procedural rules, further obstructing the Plaintiff's right to a prompt post-seizure hearing.

308. The Defendant Matthew Deschler Esq., intentionally furthered the conspiracy and obstructed the Plaintiff's right to a post-seizure hearing by moving the state court to vacate the

Rule to Show Cause Order issued on April 1st, 2024, moving the court to give validity to the void ab initio judgment by issuing a Judicial Case Assignment Order, and after finally conceding that the manner in which the underlying confession of judgment was entered was prohibited, again moved the court to break procedural rules and substantive law "amending" the judgment amount, removing the accelerated rent amount, at which he succeeded.

309. The Defendants collectively unlawfully deprived the Plaintiff of the subject premises and her personal property, with the inherent power of the County Sheriff behind them, pursuant to the void ab initio confessed judgement- without the hearing on Petition to Strike/Open required by the Rules of Civil Procedure after it is timely filed, violating the Plaintiff's right due process of law in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States.

310. The Plaintiff was not served with nor was a writ of execution entered on the docket before the Writ of Possession was enforced.

311. The Defendants acted strategically and in concert breaking Pennsylvania's Rules of Civil Procedure to affect an unlawful seizure of the Plaintiff's leasehold and property in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States as incorporated and applied to the states by way of the Fourteenth Amendment to the Constitution of the United States.

312. At all times relevant hereto, Defendants Prothonotary Holly Ruggiero, Prothonotary Deputy Melissa Shoemaker, Sheriff Deputy Kathleen A. Nansteel, and Sheriff Richard Johnston acted pursuant to a policy or custom normally utilized in Northampton County to assist creditors in depriving debtors of personal property without court order, a writ of execution, and without providing an opportunity for the debtor to be heard as required by the Rules of Civil Procedure.

313. Defendants Borko Milosev, 120 Northampton, LLC, Steven T. Williams, Esq., Law Office of Steven T. Williams, LLC d/b/a Waldron & Williams, and Post Road Management, LLC, were not authorized by Pennsylvania law to confess judgement against the Plaintiff for accelerated rent and in

ejectment for possession of the subject premises, as such is prohibited by law in Pennsylvania.

314. Defendants Prothonotary Holly Ruggiero lacked authority, subject matter and personal jurisdiction to enter the void confessed judgment against the Plaintiff in the Northampton County Court of Common Pleas.

315. The Plaintiff still does not have possession of her property nor the subject premises.

316. The applicable constitutional amendments were clearly established at the time of the property deprivation.

317. All of the Defendant's concerted actions amount to a conspiracy, and are the direct and proximate cause of the Plaintiff's loss of her property and the subject premises.

318. At all times relevant hereto, the Defendants acted in concert, egregiously, with malice, and reckless indifference towards the Plaintiff's federally protected rights.

319. The joint action of the private parties, attorneys, and state officials' abuse of state procedures was a direct and proximate cause of the constitutional deprivation suffered by the Plaintiff.

As part of her relief for Count One, Plaintiff asks the Court to: **"**(3) issue an injunction directing Defendants to cease any enforcement of the void *ab initio* judgment amount of $4,798.09, prohibit Defendants from engaging in any further unconstitutional conduct including executing unlawful writs or judgments; (4) declare the confessed judgment void *ab initio* and vacate it." See Prayer for Relief, ECF 69, p. 50.

Several Defendants have moved to have Count One dismissed based on the *Rooker-Feldman* doctrine. The Court agrees. A motion to dismiss pursuant to the *Rooker–Feldman* doctrine is a challenge to the court's subject matter jurisdiction. *Singleton v. Collins*, 513 Fed.Appx. 251, 252, (3d Cir. 2013). Where the

court lacks subject matter jurisdiction, it may dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1). *Gary v. Braddock Cemetery*, 517 F.3d 195, 203 (3d. Cir. 2008). Challenges to subject matter jurisdiction may be facial or factual. *Id.* A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. *Id.* An attack to subject matter jurisdiction based on the *Rooker–Feldman* doctrine is a factual attack.  *Nev. First Fed., LLC v. Macciocca*, 2015 WL 4461828, at *2 (E.D. Pa. July 21, 2015); *McCurdy v. Esmonde*, 2003 WL 223412, at *4 (E.D. Pa. Jan. 30, 2003). Thus, the court may weigh and consider evidence outside the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In addition, "no presumptive truthfulness attaches to plaintiff's allegations." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

The *Rooker-Feldman* doctrine precludes federal courts from asserting jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). A federal claim is barred by the *Rooker-Feldman* doctrine when the claim was either "actually litigated in a state court prior to the filing of the federal action" or "inextricably intertwined with the state adjudication ...." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). A federal claim is "inextricably intertwined" with an issue adjudicated by a state court when "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state

court's judgment." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009); *see also In re Knapper*, 407 F.3d at 580 (a federal claim is inextricably intertwined with a prior state court judgment when "federal relief can only be predicated upon a conviction that the state court was wrong.")

Our Court of Appeals has set forth four requirements for the *Rooker-Feldman* doctrine to apply. These are: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil Corp.*, 544 U.S. at 284).

In addition, this Court has held that a "state court confessed judgment is a final judgment covered by the *Rooker-Feldman* doctrine whether or not a petition to strike or open has been filed in either state or federal court." *Complete Business Solutions Group, Inc. v. Sunrooms America, Inc.*, 474 F. Supp. 3d 693, 694-95 (E.D. Pa. 2020); *see also Schraven v. Phelan Hallinan Diamond & Jones, LLP*, No. 15-3397, 2016 WL 374729, at *2 (E.D. Pa. Feb. 1, 2016) ("As a starting point, the *Rooker–Feldman* doctrine applies to all judgments by a state court, including ... judgments by confession.... [C]onfessed judgments are treated by federal courts as judgments on the merits.") (citations omitted)[3]

---

[3] Plaintiff cites to the Third Circuit's decision in *James v. Draper* (*In re James*), 940 F.2d 46 (3d Cir. 1991), wherein the Third Circuit referenced an exception to the *Rooker-Feldman* doctrine. . that a federal bankruptcy court may intervene when the state proceedings are considered a legal nullity and thus void *ab initio*. *In re James, 940 F.2d at 52* . However, following In re James, the Third Circuit in *In re Knapper*, 407 F.3d at 581 n.16 (3d Cir. 2005) (citations omitted) and *Todd v. United States Bank National Association*, 685 F. App'x 103, 106 (3d Cir. 2017), held that the

Plaintiff is mounting a direct attack on what she believes to be an erroneous state-court confessed judgment against her that was filed on March 24, 2022, before this federal action was filed, and seeks relief that not only would require the Court to revisit and reassess the merits of the underlying state-court confessed judgment but also require the Court to expressly declare that the confessed judgment is void and without effect. Accordingly, the relief sought by Plaintiff in the SAC is inextricably intertwined with the underlying state-court action and, therefore, amounts to the functional equivalent of an appeal from a final state-court judgment. as the judgment has not been stricken or opened. Plaintiff's claim in Count One for violation of the Fourth and Fourteenth Amendments is, therefore, barred by the *Rooker-Feldman* doctrine.

If Plaintiff believes that the confession of judgment entered against her on March 24, 2022 is void *ab initio*, it was incumbent on her to challenge the state-court judgment through that state-court system and, if unsuccessful, attempt to seek relief by writ of certiorari from the United States Supreme Court. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). The Court notes that Plaintiff did not take an appeal to the Superior Court of Pennsylvania from Judge Panella's December 3, 2024 Order denying Plaintiff's April 1, 2024 *pro se* Petition to Strike the Confession of Judgment.

Several Defendants have moved to dismiss the remaining claims for failure to state a claim under Fed. R. Civ. P.12(b)(6). Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to

---

exception it referenced in *In re James* was actually dicta and refused to apply it. *See also Marshall v. Abdoun*, 2023 WL 2588166 at * 7 (E.D. Pa. 2023).

the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir.

2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002))

(internal quotation marks omitted). This Court construes *pro se* pleadings

liberally. *See Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011). Only if

"the '[f]actual allegations ... raise a right to relief above the speculative level'" has the

plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). However, "the tenet

that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint

states a plausible claim for relief ... [is] a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense").

"[C]ourts must consider the complaint in its entirety, as well as other sources

courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular,

documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). *See also Mayer v. Belichick*, 605 F.3d

223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only

the complaint, exhibits attached to the complaint, matters of public record, as well as

undisputedly authentic documents if the complainant's claims are based upon these

documents.") Courts may also consider "an undisputedly authentic document that a

defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based

on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192,

1196 (3d Cir. 1993). The defendant bears the burden of demonstrating that a plaintiff

has failed to state a claim upon which relief can be granted. *See Hedges v. United*

*States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*,

926 F.2d 1406, 1409 (3d Cir. 1991)).

**COUNT II-CONSPIRACY**

In Count II, Plaintiff asserts a claim against all Defendants for conspiracy

as follows:[4]

> 321. At all times relevant hereto, the Defendants Borko
> Milosev, 120 Northampton, LLC, Post Road Management,
> LLC, and Steven Todd Williams, Esq. by and through Waldron
> & Williams, conspired with Defendants Samuel E. Cohen,
> Esq., and Constance K. Nelson, Esq. of Gross McGinley, LLP,
> to circumvent the hearing required by the Rules of Civil
> Procedure governing confessions of judgment and
> strategically and intentionally broke those same procedural
> rules to successfully and unlawfully deprive the Plaintiff of her
> personal property and the subject premises arbitrarily and
> without notice.

> 322. Defendants Nelson self-verified the Petition to
> Strike/Open, Defendant Cohen filed the Petition without
> attaching a rule to show cause for proper adjudication, and
> Defendant Williams filed an answer without a Rule to Show
> Cause directing him to.

> 323. Defendants Williams and Nelson signed and filed a
> stipulation to strike attorney's fees in the underlying action
> without the Plaintiff's prior knowledge or consent.

---

[4] Plaintiff appears to have brought Count II under Section 1983 as well. See ECF 69 at ℙ 342 ("But for the **joint action of state officials** … the conspiracy to violate the Plaintiff's constitutional rights and deprivation of property would have been wholly unsuccessful") (emphasis added); *Id*. at ¶ 343 (Defendants "conspired to deprive the Plaintiff of her **constitutional rights**…") (emphasis added); *Id*. at ¶ 344 (Defendants acted with "deliberate disregard for the Plaintiff's **Constitutional Rights**.")(emphasis added); *Id*. at ¶ 345 (Defendants acted to "cause the deprivation of the Plaintiff's property in violation of her **Constitutional Rights**) (emphasis added); and, Wherefore Clause for Count II ("… in conspiring to violate Plaintiff's rights under the **Fourth and Fourteenth Amendments** to the United States **Constitution"**) (emphasis added).

324. Defendant Steven Todd Williams, Esq., conspired with Prothonotary Holly Ruggiero, Deputy Prothonotary Melissa Shoemaker, Deputy Sheriff Kathleen Nansteel, and Sheriff Richard Johnston to unlawfully enforce the procedurally insufficient Writ of Possession and Praecipe for Writ of Possession, without a writ of execution, nor a Rule to Show Cause Order on the docket, furthering the circumvention of the hearing required by Pennsylvania's Rules of Civil Procedure.

325. Defendant Steven Todd Williams, Esq., stating he "brought" a rule to show cause to bring forth the Petition to Strike/Open filed by the Gross McGinley Defendants at the September 7th, 2023 "Emergency" Motions hearing, was in furtherance of the scheme to conceal the perverted procedural history, and to obstruct the Plaintiff's right, and done with the intent to push forth adjudication of the severely inadequate Petition to Strike/Open.

326. Defendant Constance K. Nelson, Esq., conspired with Defendant Steven Todd Williams, Esq., to cover up the initial conspiracy when she attempted to "slip" the "Cerfication" document signed by Defendant Williams in her proposed Petition to Set Aside the Judgment falsely claiming it had been filed on September 28th, 2022, although it had not been time-stamped as filed, nor entered on the docket.

327. Defendants Matthew B. Weisberg, Esq., Gary Schafkopf, Esq., and L. Anthony DiJiacomo, III, Esq., intentionally furthered the initial conspiracy by conspiring with Defendant Steven Todd Williams, Esq. to strategically obstruct the Plaintiff's right to a prompt post-seizure hearing egregiously utilizing dilatory and manipulative tactics to maintain the successful deprivation of the Plaintiff's property, intentionally lied about and concealed the void ab initio nature of the judgment when asked, did not attend a motion to compel hearing, failed to adjudicate the confession of judgment and gained the Plaintiff sanctions in excess of seven hundred dollars at the same motions court hearing held to withdraw their representation.

328. Defendant Zachary Zawarski, Esq., furthered the initial conspiracy in collusion with Defendant Steven Todd Williams, Esq., by; (1) concealing the void ab initio nature of the confession of judgment when specifically asked; (2) producing a copy of the fraudulent Sheriff's Notice of Possession

addressed to a different client of his in an attempt to convince the Plaintiff the seizure was lawful; (3) repeatedly tried to persuade the Plaintiff to conduct discovery before presenting a rule-to-show-cause as a dilatory tactic designed to exhaust the Plaintiff's financial resources before she could secure a hearing with a Judge, and (4) attempted to convince the Plaintiff that Defendant Williams did not file an Answer to the Petition to Strike with the purpose of deterring the Plaintiff from understanding that a Rule to Show Cause should have been issued before a response, although he had already confirmed by email that Defendant Williams did indeed file an Answer.

329. Defendant Matthew J. Deschler, Esq., began representing Defendant 120 Northampton, LLC as lead co-counsel with Defendant Williams

330. The Plaintiff's Petition to Strike the Void Judgment was already filed when Defendant Deschler's representation began.

331. Defendant Deschler was aware of the authorities cited making it the court's duty to strike the void judgment, however he attempted to obstruct the Plaintiff's right to due process by moving to vacate the Rule to Show Cause Order, attempting to schedule the case for judicial case assignment, and moving to have the Petition to Strike/Open filed by the Gross McGinley Defendants put forth over the Plaintiff's pro se Petition to Strike.

332. When his repeated attempts failed due to the Plaintiff's contestation, he finally conceded that the judgment was prohibited as entered, but intentionally and recklessly drafted a motion to amend the judgment with the intention of its succession breaking the procedural rules, to create the illusion that the gross reduction of the judgment amount was done at his hand, and granted to he and his client's benefit.

333. Defendant Deschler joined the second half of the conspiracy, with the objective of furthering the scheme to obstruct the Plaintiff's right to due process, and to further aggravate any redress the Plaintiff may be entitled to in the District Courts.

334. The Defendants violated many of Pennsylvania's Rules of Civil Procedure in order to carry out and maintain the

successful deprivation of the Plaintiff's rights to due process, and her property.

335. The initial conspiracy succeeded in unlawfully depriving the Plaintiff of her property, and right to due process, the second conspiracy obstructed the Plaintiff's right to a prompt post-seizure hearing, aggravating any possibility of redress.

336. Defendants Borko Milosev, 120 Northampton, LLC, Steven Todd Williams, Esq., Law Office of Steven T. Williams, LLC d/b/a Waldron & Williams, and Post Road Management, LLC maliciously and knowingly entered the void and excessive judgment against the Plaintiff for money including accelerated rent and in ejectment for possession of real property, with the intention to intimidate the Plaintiff into abandoning the subject premises, and to prevent her from posting bond in the Northampton County Court of Common Pleas.

337. Defendants Samuel E. Cohen, Esq., Constance K. Nelson, Esq., and Gross McGinley, LLP, as prior counsel for the Plaintiff maliciously, and intently failed to present the timely filed Petition to Strike/Open in motions court for proper adjudication of the Stay of Execution request, thereby leaving the Plaintiff unknowingly open to ejectment, collections, and garnishment.

338. Defendants Zachary Zawarski, Esq., by and through Zachary Zawarski, LLC further enabled the scheme to circumvent the adjudication process by making fraudulent misrepresentations to the Plaintiff about the process, persuaded the Plaintiff to pay the unlawful sanctions, presented fraudulent documents to convince the Plaintiff her rights were not violated, and concealed the void nature of the confessed judgment.

339. Defendants 120 Northampton, LLC, Steven Todd Williams, Esq., Law Office of Steven T. Williams, LLC by and through Waldron & Williams, and Post Road Management, LLC, were fully aware of the timely filing of Petition to Strike/Open including the request for a Stay of Execution, as evidenced by the Answer to the Petition timely filed and entered onto the docket.

340. Defendants 120 Northampton, LLC, Steven Todd Williams, Esq., Law Office of Steven T. Williams, LLC by and

through Waldron & Williams, and Post Road Management, LLC possessed the ability to compel Defendants Samuel E. Cohen, Esq., Constance K. Nelson, Esq., and Gross McGinley, LLP, to present the Petition to Strike/Open for proper adjudication to adhere to state law procedures and to prevent the violation of the Plaintiff's constitutional rights but, intentionally failed to do so.

341. Defendant Steven Todd Williams, Esq., Law Office of Steven T. Williams, LLC d/b/a Waldron & Williams, Samuel E. Cohen, Esq., Constance K. Nelson, Esq., Gross McGinley, LLP, Matthew B. Weisberg Esq., Gary Schafkopf, Esq., L. Anthony DiJiacomo, III Esq., and Weisberg Law, P.C., are all attorneys and firms licensed to represent clients in Pennsylvania, are subject to Pennsylvania's Rules of Professional Conduct, and reasonably so, are believed to be intelligent in the matters of clients they choose to represent.

342. But for the joint action of state officials including Prothonotary Holly Ruggiero, Deputy Prothonotary Melissa Shoemaker, Deputy Sheriff Kathleen Nansteel, and Sheriff Richard Johnston, the conspiracy to violate the Plaintiff's constitutional rights and deprivation of property would have been wholly unsuccessful.

343. Considering the facts stated, it is reasonable to believe that all of the Defendants, led by Defendants Borko Milosev and Steven Todd Williams, Esq., conspired to deprive the Plaintiff of her constitutional rights, to achieve the arbitrary and permanent ejectment of the Plaintiff, and to intimidate her with the unlawful judgment amount of $116,247.54.

344. At all times relevant, the Defendants acted with intent, malice, recklessness, and a deliberate disregard for the Plaintiff's Constitutional Rights.
345. All of the Defendant's concerted actions were the direct and proximate cause of the deprivation of the Plaintiff's property in violation of her Constitutional Rights.

To state a conspiracy claim under 42 U.S.C. § 1983, Plaintiff must first have a claim of an underlying constitutional injury. *Durham v. Dep't of Corrections*, 173 F. App'x. 154, 156 (3d Cir. 2006); *Dykes v. Southeastern Pa. Transp. Auth.,* 68 F.3d 1564,

1570 (3d Cir.1995); *Holt Cargo Sys., Inc. v. Delaware River Port Auth.*, 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998), aff'd, 165 F.3d 242 (3d Cir. 1999). Since Plaintiff's underlying federal constitutional claim under the Fourth and Fourteenth Amendments in Count One has already been dismissed pursuant to the *Rooker-Feldman* doctrine, Plaintiff's conspiracy claim under 42 U.S.C. § 1983 fails as well.

Even if Plaintiff did successfully plead a claim for an underlying constitutional injury, her conspiracy claim fails on the merits. "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law reached an understanding to deprive him of his constitutional rights." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (internal quotation marks and citation omitted). This requires that the state actors took "concerted action" based on an "agreement" to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights. *Id*. at 295.

"Specific allegations of an agreement to carry out the alleged chain of events is essential in stating a claim for conspiracy." *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 648 (E.D. Pa. 2014) (citing *Spencer v. Steinman*, 968 F.Supp. 1011, 1020 (E.D.Pa.1997). "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Id*. However, simply "[s]tating that the defendants 'conspired' and 'acted in concert' is not equivalent to pleading a conspiracy with sufficient factual matter to state a plausible claim upon which relief can be granted." *Schneller v. Philadelphia Newspapers Inc.*, 577 F. App'x 139, 143 (3d Cir. 2014) (*per curiam*).

Putting aside the issue of whether all the named Defendants, particularly the private law firms, are state actors, Plaintiff has failed to allege the existence of an actual **agreement** or **meeting of the minds** among the Defendants to take the actions Plaintiff claims caused her injuries. At best, Plaintiff has alleged a series of independent actions taken by 21 Defendants at different points in time that allegedly resulted in violations of her constitutional rights.  *See Rosembert*, 14 F. Supp. 3d at 648. The Alleged actions of the Defendants appear to be not the result of a conspiracy but the result of zealous representation of their respective clients. For these reasons, Plaintiff's conspiracy claim is dismissed.

## COUNT V-EQUAL PROTECTION UNDER THE 14TH AMENDMENT

Plaintiff's remaining federal claim is brought against Deputy Sheriff Nansteel, Sheriff Johnston, Prothonotary Ruggiero, Prothonotary Deputy Shoemaker**,** claiming these Defendants violated the Equal Protection Clause of the Fourteenth Amendment in the following particulars:

> 386. The Defendants are officials of Northampton County by and through the Northampton County Court of Common Pleas, with more than twenty (20) years of experience combined in civil matters filed in the trial court.
>
> 387. Defendants Kathleen A. Nansteel and Sheriff Richard Johnston, have ample experience in the service of writs and attachment procedures in Northampton County, and maliciously, intently, and recklessly attached the Plaintiff's property unlawfully without a writ of execution as required by federal law, state law, and local rules.
>
> 388. Defendants Prothonotary Holly Ruggiero, and Prothonotary Deputy Melissa Shoemaker lacked personal and subject matter jurisdiction to enter judgment against the Plaintiff and to issue a writ of possession for the Plaintiff's property.

389. The Defendants in their capacities as officials of Northampton County, acted under color of state law in executing and enforcing a void ab initio judgment against the Plaintiff without a lawful basis.

390. The actions of the defendants in executing the judgment and taking the Plaintiff's property were carried out in a manner that discriminated against the Plaintiff and denied her equal protection under the law.

391. Specifically, the Defendants treated the Plaintiff differently from other individuals similarly situated who had not experienced such unlawful actions without a rational basis for such differential treatment.

392. A search of the Confession of Judgment actions brought in Northampton County Court of Common Pleas, reveal that every single time a Praecipe for Writ of Possession was filed, it included a "Certification" Section.

393. The Defendant Prothonotaries routinely deny filings for facial defects.

394. Defendant Steven Todd Williams Esq.'s filings were facially defective and did not comply with Pennsylvania's Rules of Civil Procedure, including the Writ of Possession and Praecipe.

395. The search also revealed that enforcement of confessed judgments for money where the personal property of a Defendant debtor was levied upon, was commenced by a Writ of Execution.

396. As a direct and proximate result of the Defendants actions, the Plaintiff suffered significant harm, including the loss of her commercial leasehold, personal property, business income, and other non-economic damages.

397. The Defendant's actions constitute a willful and intentional violation of the Plaintiff's rights under the Equal Protection Clause to the Fourteenth Amendment.

To the extent Plaintiff is suing Prothonotary Ruggiero and Prothonotary Deputy Shoemaker in their individual capacities, both are entitled to quasi-judicial immunity[5] for the ministerial acts of executing a facially valid Confession of Judgment and processing a facially valid Writ of Possession. *See Nemeth v. Office of Clerk of Superior Court of New Jersey*, 837 Fed. App'x  924, 928 (3d Cir. 2020**;** *Villareal v. New Jersey*, 803 Fed. App'x 583, 588 (3d Cir. 2020); *Gallas v. Supreme Court of Pa.,* 211 F.3d 760, 772-73 (3d Cir. 2000). Any legal questions about the actual legal validity of the Confession of Judgment and Writ of Possession must be resolved by the courts—not the Prothonotary or the parties.

Plaintiff's allegations that "[a] search of the Confession of Judgment actions brought in Northampton County Court of Common Pleas, reveal that every single time a Praecipe for Writ of Possession was filed, it included a "Certification" Section," that "[t]he Defendant Prothonotaries routinely deny filings for facial defects," ECF 69 at ¶¶ 392-393, and that "[t]he search also revealed that enforcement of confessed judgments for money where the personal property of a Defendant debtor was levied upon, was commenced by a Writ of Execution" *id*. at ¶ 395**,** constitute conclusory statements that are insufficient to allege that these defendants were not acting to lawfully process an authorized confession of judgment.

To the extent. Plaintiff is suing the Prothonotary and Deputy Prothonotary in their official capacities, such claims must be dismissed pursuant to the Eleventh Amendment since these court officials are considered as arms of the Commonwealth of Pennsylvania. See *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193,

---

[5]

198 (3d Cir. 2008).  This immunity extends to Plaintiff's pendent state-law claims as well. See *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 120 (1984)**.**

Sheriff Johnston and Deputy Sheriff Nansteel are similarly entitled to quasi-judicial immunity from claims brought against them in their individual capacities. *See Villareal,* 803 Fed. App'x at 588. Plaintiff makes no allegations that Sheriff Johnston nor Deputy Sheriff Nansteel in executing a **facially** valid Writ of Possession at the Property were at any time taking discretionary actions acting outside of their ministerial duties. Although the Plaintiff alleges that Sheriff Johnston and Deputy Sheriff Nansteel are liable because the Confession of Judgment was allegedly void *ab initio*, she does not allege any facts suggesting that the Sheriff and Deputy Sheriff had reason to question the validity of the Confession of Judgment or Writ of Possession. The Sheriff and his deputies are not required to review the docket or verify the accuracy of the damages calculation in an underlying Confession of Judgment.

Plaintiff's claim against Sheriff Johnston and Deputy Sheriff Nansteel in their official capacities will be dismissed because, as explained above, a claim against an official in his official capacity is considered a claim against the official's office, i.e. Northampton County Sheriff's Office. *See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989)*. As such, it is no different from a suit against the State itself. *Id*.

Because local police departments are not "persons" who can be sued under § 1983, *see Johnson v. City of Erie, Pa.,* 834 F.Supp. 873, 878–79 (E.D. Pa. 1993), Plaintiff can only assert this claim against the municipality, i.e. Northampton County. However, Plaintiff is not permitted to bring claims against the County on a respondeat superior theory. Rather, a municipality can only be liable under § 1983 if the alleged

unconstitutional conduct either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell, v. Department of Social Services of City of New York*, 436 U.S. 658, 690–91 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

Plaintiff alleges that Prothonotary Ruggiero, Prothonotary Deputy Shoemaker, Sheriff Deputy Nansteel, and Sheriff Johnston "acted pursuant to a policy or custom normally utilized in Northampton County to assist creditors in depriving debtors of personal property without court order, a writ of execution, and without providing an opportunity for the debtor to be heard as required by the Rules of Civil Procedure." ECF 69 at ¶ 312. Even accepting as true, as the Court must, Plaintiff's version of the events that transpired that give rise to this action, it simply is not plausible that the Prothonotary and Sheriff's Office maintained an actual policy or custom of assisting creditors in depriving debtors of personal property without court order, a writ of execution, and without providing an opportunity for the debtor to be heard. Therefore, Plaintiff's claims

against the Sheriff and Deputy Sheriff in their official capacities will be dismissed with prejudice**.**

The remainder of the SAC contains state law claims that are brought pursuant to the Court's diversity jurisdiction.

**COUNT III-FRAUDULENT MISREPRESENTATION**

In Count III, Plaintiff asserts a claim against all Defendants for fraudulent misrepresentation as follows:

> 347. Defendants 120 Northampton, LLC, Steven Todd Williams, Esq., Law Office of Steven T. Williams, LLC d/b/a Waldron & Williams, and Post Road Management, LLC, represented to the court that they were entitled to confess judgment against Plaintiff for money including accelerated rent and in ejectment under the terms of the Lease Agreement.

> 348. The Defendants Steven Todd Williams, Esq., Law Office of Steven T. Williams, LLC, Waldron & Williams, as attorneys, and officers of the court, knew and/or were reasonably expected to know that confessing judgment for accelerated rent and ejectment is prohibited under Pennsylvania law, and that such a judgment was void ab initio due to the court's lack of subject matter and personal jurisdiction.

> 349. Defendant Steven Todd Williams, Esq., provided Defendants Samuel E. Cohen, Esq. and Constance K. Nelson, Esq., with the "Certification" document Defendant Nelson attempted to insert onto the record, fraudulently claiming it had been filed, when it had not, with the intention of covering up Defendant William's procedurally improper Praecipe for Writ of Possession.

> 350. Defendants Borko Milosev, 120 Northampton, LLC, Steven Todd Williams, Esq., Law Office of Steven T. Williams, LLC d/b/a Waldron & Williams, and Post Road Management, LLC, attached the Plaintiff's commercial leasehold and personal property to a writ of possession, without a writ of execution.

351. Defendant Sheriff Deputy Kathleen Nansteel taped a fraudulent "Sheriff Notice" to the door of the leasehold with an inoperable phone number for the Northampton County Sheriff, purporting to have the same effect as a writ of execution, and preventing the Plaintiff from alerting anyone else at the Sheriff's Department.

352. Defendants Steven T. Williams, Esq., 120 Northampton, LLC, Borko Milosev, and Sheriff Deputy Kathleen Nansteel fraudulently claimed to have posted this "Sheriff Notice" to the door of the Plaintiff's commercial leasehold October 11th, 2022.

353. Sheriff Richard Johnston fraudulently claimed to have mailed the Defendant a copy of the "Notice of Possession, Writ of Possession, and Legal Description" without mailing a copy to the attorney of record, on October 6th, 2023, although there is no docketed return on this date nor a certificate of mailing attached as claimed on the return.

354. Defendant Sheriff Deputy Kathleen A. Nansteel did not docket the sheriff return immediately after possession was returned to Defendant 120 Northampton, LLC, as required by Pennsylvania's Rules of Civil Procedure; the return was not docketed until February 17th, 2023, four months later.

355. Defendants Constance K. Nelson, Esq., and Samuel E. Cohen, Esq., by and through Gross McGinley, LLP, claimed to "not know" what happened or how possession was taken with a "stay filed".

356. Defendants Constance K. Nelson Esq., and Samuel E. Cohen, Esq., led the Plaintiff to believe the proper adjudication of the Petition to Strike/Open had begun, and fraudulently represented that a stay "filed" had the same effect as a stay granted by a judge in the trial courts.

357. Defendants Matthew B. Weisberg Esq., Gary Schafkopf, Esq., L. Anthony DiJiacomo, III Esq., and Weisberg Law, P.C., furthered the conspiracy, by fraudulently claiming they "did not know" what was done, not moving for proper adjudication of the Petition to Strike/Open, or moving to disqualify the inadequate Petition to Strike/Open due to attorney verification and presenting a new Petition to Strike asserting the void nature of the excessive judgment, and using manipulation and

dilatory tactics to harm the Plaintiff with the intent of furthering the conspiracy to maintain the deprivation.

358. On February 8th, 2023, in an email to Defendants Matthew B. Weisberg Esq., Gary Schafkopf, Esq., L. Anthony DiJiacomo, III Esq., and Weisberg Law P.C., the Plaintiff specifically questioned the validity of Defendant 120 Northampton, LLC's entitlement to "property and accelerated rent" to which she was told by the Defendant L. Anthony DiJiacomo, III Esq. she was wrong.

359. Similarly, Defendant Zachary Zawarski ignored the Plaintiff's questions about the prohibition of double recovery, fraudulently told the Plaintiff Defendant Williams did not file an Answer to the Petition to Strike/Open in an attempt to conceal the overt act, and fraudulently told the Plaintiff discovery needed to be conducted before a proposed Rule to Show Cause order was presented, further obstructing the Plaintiff's right to a prompt post-deprivation hearing. Defendant Zawarski also presented the Plaintiff with a replica of the fraudulent "Sheriff's Notice of Possession" addressed to a different client, attempting to convince the Plaintiff the documents were valid.

361. On September 7th, 2023, Defendant Steven Todd Williams, Esq., fraudulently presented to the court that he could himself bring forth a rule to show cause on the Plaintiff's behalf to present Petition for scheduling that was not before the court at that time.

362. Defendant Williams made knowingly false statements about the Plaintiff's character stating that she had gone through "seven" attorneys, and that she had significant issues with each of the co-conspirators to persuade the court allow the Petition to Strike/Open filed by the Gross McGinley Defendants to be adjudicated, as opposed to the Plaintiff's new Petition highlighting their collective failures.

363. Defendant Matthew J. Deschler, Esq., repeatedly and fraudulently attempted [to] represent to the state court that the confessed judgment was valid, although he was aware of its' void nature.

364. Defendant Deschler filed a Motion to Amend the Money Judgment fraudulently presenting to the Plaintiff and the state-court that a confession of judgment is not exhausted once

utilized for a debt, that an amendment of the judgment can be effected by the Prothonotary without filing for leave to amend the Confession of Judgment Complaint, and that the state court had subject matter jurisdiction to make such orders.

365. Defendant Deschler attempted to use this motion as a catalyst in a scheme to fraudulently induce the Plaintiff to abandon the nine o'clock (9:00) a.m. Call for the argument list on October 15th, 2024, in an attempt to prevent argument on the Plaintiff's Petition to Strike. The Plaintiff justifiably relied on the validity of the trial court's judgment and the representations made by all of the Defendants, initially believing them to be lawful and enforceable, causing the Plaintiff tremendous stress, anxiety, with the unexpected loss of her property and the mental anguish she and her family suffered because of the conspiracy.

367. As a direct and proximate result of the Plaintiff's initial reliance on the Defendant's fraudulent representations, the Plaintiff has suffered and continues to suffer substantial damages, including but not limited to financial losses from the unlawful judgment, the loss of business income, the costs of defending against the void ab initio judgment, mental and emotional distress from the manipulation tactics utilized by the Defendants, attempting to learn and navigate complex litigation and the inability to find competent, uncompromised legal representation.

Under Pennsylvania law, in order to state a claim for fraudulent misrepresentation, a plaintiff must establish each of the following elements by clear and convincing evidence: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused the reliance." *Porreco v. Porreco*, 571 Pa. 61, 811 A.2d 566, 570 (2002) (citations omitted).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other

conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). Rule

9(b) requires the following:

> [A] plaintiff alleging fraud must state the circumstances of the alleged fraud with    sufficient particularity to    place    the defendant on notice of the precise misconduct with which it is charged.To  satisfy  this  standard,  the  plaintiff must plead or allege  the  date,  time  and  place  of  the  alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir.2007) (internal quotation and

editorial marks and citation removed). "The purpose of Rule 9(b) is to provide a

defendant with notice of the precise misconduct with which he or she is charged and to

prevent false or unsubstantiated charges." *Cooper v. Broadspire Servs., Inc.,* No. Civ.

A. 04–5289, 2005 WL 1712390, at *5 (E.D.Pa. July 20, 2005).

In Count III, Plaintiff has basically taken the allegations from Counts I and II and

inserted the word "fraudulently" before claimed action by the Defendants. Plaintiff failed

to identify with particularity any representation of fact or concealment of fact. ECF Doc.

69, ¶¶ 347-367. Second, there is no "transaction at hand" for which the representation

could be material to. Third, there are no "well-pled facts" that any of the Defendants

knew that falsity of any representation of fact made by them, let alone the failure to

identify the specific representation of fact). Fourth, there are no "well-pled facts" that any

of the Defendants intended to mislead Plaintiff into reliance on an unspecified statement

of fact. Fifth, there are no "well-pled facts" that Plaintiff **justifiably** relied upon any

misrepresentation of fact made by any Defendant. Sixth, there are no "well-pled facts"

that Plaintiff suffered any harm as a result of any representation of fact made by any

Defendant. Accordingly. Count III will be dismissed as to all Defendants with the exception of Defendants Cohen, Nelson and the Gross McKinley law firm.

## COUNT IV-WRONGFUL USE OF CIVIL PROCEEDINGS

In Count IV, Plaintiff asserts a claim against Defendants 120 Northampton, LLC, Post Road Management, LLC, Borko Milosev, Steven T. Williams, Esq., Steven Williams, LLC, and Waldron & Williams for wrongful use of civil proceedings under Pennsylvania's Dragonetti Act,[6] 42 Pa. Cons. Stat. Ann. § 8351 *et seq*.

In order to state a claim for wrongful use of civil proceedings under the Dragonetti Act, Plaintiff must demonstrate: "(1) the underlying civil proceedings were terminated in favor of the plaintiff, (2) the defendant caused these proceedings to be instituted without probable cause or with gross negligence, and (3) the proceedings were instituted primarily for an improper purpose." *Pendergrass v. Pendergrass*, 518 F. Supp. 3d 839, 847 (E.D. Pa. 2021).

Here, the underlying civil proceedings, to the extent they have been terminated at all, were not terminated in favor of Plaintiff. Although Plaintiff was successful in modifying the amount of the confessed judgment, the confessed judgment for her non-payment of rent in the amount of $4,798.09 still remains against Plaintiff. Therefore, Plaintiff has failed to satisfy the first element of a claim for wrongful use of civil proceedings under the Dragonetti Act and Count IV will be dismissed.

## COUNT VI-TRESPASS

In Count VI, Plaintiff asserts a claim against Sheriff Johnston and Deputy Sheriff Nansteel for trespass as follows:

---

[6] The Dragonetti Act codified the common law tort of wrongful use of civil proceedings.

399. Defendant 120 Northampton, LLC's actions on October 28th, 2022, included directing the county sheriff to execute against the subject premises in pursuit of the void ab initio confessed judgment, and the Sheriff's subsequent entry onto the premises, locking the Plaintiff out, constitute an unlawful and unauthorized entry onto the Plaintiff's property, thereby committing trespass.

400. The Defendants had no legal justification to enter onto the Plaintiff's property, as the underlying confessed judgment that purported to authorize such entry was void ab initio due to the prothonotary's lack of subject matter and personal jurisdiction over the void judgment.

401. Defendant Deputy Kathleen A. Nansteel was authorized by Defendant Sheriff Richard Johnston to enforce the Writ of Possession although they were both aware the Writ of Possession was not in compliance with the rules of civil procedure, and that no writ of execution had been filed.

As discussed, *supra*, Sheriffs enjoy quasi-immunity when they act in either a ministerial capacity or pursuant to the orders of a judge and not in a discretionary manner. Sheriff Johnston and Deputy Sheriff Nansteel were merely carrying out the duty given to them by the courts, when they seized the Property pursuant to a facially valid Writ of Possession. Therefore, Sheriff Johnston and Deputy Sheriff Nansteel are entitled quasi-judicial immunity from Plaintiff's claim for trespass and Count VI is dismissed.

**COUNT VIII-CONVERSION**

In Count VIII, Plaintiff asserts a claim against Defendants 120 Northampton, LLC, Borko Milosev, Post Road Management, LLC for conversion as follows:

412. Without the Plaintiffs consent, nor jurisdiction, the Defendants acted in concert, and under color of law to unlawfully and intently deprive the Plaintiff of her right to the

subject premises, and all of her property contained within, including restaurant equipment, personal property, and all tenant improvements.

413. The Plaintiff was entitled to the right to possession of the subject premises at the time of seizure, had not abandoned the premises nor her property, and at all times relevant, was represented by Defendants Constance K. Nelson, Esq., Samuel E. Cohen, Esq., by and through Gross McGinley, LLP.

414. Defendants 120 Northampton, LLC, Borko Milosev, Post Road Management, LLC, Steven T. Williams, Esq., Law Office of Steven T. Williams, LLC by and through Waldron & Williams, attempted to intimidate and fraudulently induce the Plaintiff into removing her personal property and equipment within ten days after October 28th, 202[2], with an unlawful ten day abandoned property notice.

415. Defendants 120 Northampton, LLC, Borko Milosev, Post Road Management, LLC, Steven T. Williams, Esq., Law Office of Steven T. Williams, LLC d/b/a Waldron & Williams, Constance K. Nelson, Esq., and Samuel E. Cohen, Esq., acted in concert, to continue the deprivation of the Plaintiff's possession of the property by repeatedly circumventing adjudication as opposed to returning possession of the premises to the Plaintiff.

416. The Plaintiff was without means nor a suitable alternate location for the property which included restaurant equipment, furniture, electronics, oversized ornate decorations, and tenant improvements.

417. Defendants 120 Northampton, LLC, Borko Milosev and Post Road Management, LLC have since, re-let the subject premises to a new tenant, a bakery, "Cake and Corolla", who is currently utilizing the Plaintiffs tenant improvements, furnishings, and equipment.

418. The Northampton County Sheriff's unlawful attachment and execution pursuant to the void confessed judgment, intentionally took possession of the Plaintiff's property without consent, and asserted control over the Plaintiff's property giving it to Post Road Management, LLC and 120 Northampton, LLC, who maintained their control.

419. The Defendants lacked legal authority to seize the Plaintiff's property, and their actions constituted a wrongful taking.

420. At all times relevant hereto, the Defendants acted in retaliation with malice, intent, recklessness, and total disregard for the Plaintiff's constitutional rights, and entitlement to the subject premises including the Plaintiff's property held inside.

421. As a direct and proximate result of the Defendant's wrongful conversion of Plaintiff's property, Plaintiff has suffered damages, including but not limited to the loss of the value of the property, the cost of replacing or restoring the property, and emotional distress.

"Conversion is defined as the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification. When such an act occurs, the plaintiff may bring suit if he had an immediate right to possession of the chattel at the time it was converted."

*Spector Gadon & Rosen, P.C. v. Rudinski, Orso & Lynch*, 231 A.3d 923, 925 (Pa. Super. 2020) (citation omitted). Conversion may be committed by:

(a) Acquiring possession of the goods, with an intent to assert a right to them which is in fact adverse to that of the owner[;] (b) Transferring the goods in a manner which deprives the owner of control[;] (c) Unreasonably withholding possession from one who has the right to it[; or] (d) Seriously damaging or misusing the chattel in defiance of the owner's rights. Prosser, Torts, § 15 (2d ed. 1955).

*Norriton E. Realty Corp. v. Cent.-Penn Nat'l Bank*, 254 A.2d 637, 638 (Pa. 1969) (quotation marks omitted).

With respect to a tenant's property that remains on leased premises, the Superior Court of Pennsylvania has stated:

> As a general rule, a tenant does not forfeit or lose title to his personal property by neglecting to remove it from the leased premises after the termination of the lease.
>
> This is so even if the tenant fails to remove his personalty within a reasonable time after the expiration of the lease. 49 Am.Jur.2d, Landlord and Tenant, § 1014. Any retention, use or disposal of the tenant's property by the landlord, or any other exercise of dominion over it to the exclusion of the rights of the tenant, constitutes a conversion of the tenant's property by the landlord.

*Bednar v. Marino*, 646 A.2d 573, 577-78 (Pa. Super. 1994). "It is well-established that a lessor cannot infer abandonment of a lessee's personal property that remains at the leased premises following the tenant's departure." *Hoyt v. Christoforou*, 692 A.2d 217, 222 (Pa. Super. 1997) (citing above passage in *Bednar*).

In addition, the Lease contains the following clause:

> 24. Improvements, Alterations and Trade Fixtures: Prior to the Initial Term, at Landlord's cost and expense, it will perform the work (if any) more specifically described on Exhibit "B", attached hereto. Prior to the Initial Term, at Tenant's cost and expense, it will perform the work (if any) more specifically described on Exhibit "C", attached hereto. Any Tenant work or improvements to the Premises, including those set forth on Exhibit "C", shall only be conducted after receiving Landlord's prior written approval, and the approval of the mortgagee of the Premises, if any and if required (execution of this Lease shall not be deemed Landlord approval). Tenant shall submit plans or drawings of any such contemplated work for Landlord's review and approval, and shall provide information as to the contractor(s) performing such work and shall further provide evidence of insurance, as reasonably required by Landlord. In addition to Landlord's approval, Tenant shall obtain, at its sole cost, the approval of all applicable authorities and agencies (municipal or otherwise) having jurisdiction over Tenant's work…..
>
> All such leasehold improvements shall belong to and become part of the Landlord's property and be regarded for purposes of this Lease as part of the Demised Premises subject to the terms of this Lease.

ECF 69-1, pp. 10-11.

While Defendants were, pursuant to the Writ of Possession entitled to seize the actual premises and, pursuant to the Lease, to any leasehold improvements after Plaintiff withheld two month's rent, the Defendants were not also entitled to seize Plaintiff's property and allow a new tenant to use Plaintiff's property without compensating Plaintiff. Therefore, Plaintiff may proceed with her conversion claim as to any personal property that was left at the Property that cannot be classified as leasehold improvements.

## COUNT VII-TRESPASS TO CHATTELS

In Count VII, Plaintiff has brought a claim against Defendants 120 Northampton, LLC, Borko Milosev, Post Road Management, LLC for trespass to chattels as follows:

> 405. At all times relevant, the Plaintiff was the owner of certain personal property, including but not limited to restaurant equipment, personal belongings, and immoveable fixtures installed in the subject premises until the end of the lease term on December 31st, 2026, including but not limited permanent fixtures such as the installation of electrical wiring, fire suppression equipment, plumbing, tiling, costs of the HVAC system incorporated into the lease agreement, and custom furniture (hereinafter referred to as "chattels").

> 406. On October 28th, 2022, the Sheriff Deputy Kathleen Nansteel executed against the Leasehold, including the Plaintiff's improvements, personal property, and restaurant equipment, without Plaintiff's consent or any legal justification.

> 407. The Defendants claim to currently have in their possession the Plaintiff's property, after initially asserting through preliminary objections in the underlying proceeding that it was no longer in their possession. This has not been verified by the Plaintiff, and if true, the condition of the property is unknown, and would be too burdensome on the Plaintiff to inspect, test, move, and store the property.

408. As a direct and proximate result of the Defendant's unlawful interference with the Plaintiff's chattels, the Plaintiff has suffered damages, including but not limited to the loss of the value of the chattels, the cost of replacing or restoring said property, and emotional distress.

409. As a direct and proximate result of the Defendant's actions, the Plaintiff's business is now defunct and without possession of the leasehold, leaving the Plaintiff without a location to accept the property if it were returned, and making it unduly burdensome for the plaintiff to move and store the personal property and restaurant equipment.

410. The Defendant's conduct was intentional, reckless, and without legal justification and regard for the Plaintiff's rights.

Trespass to chattels is a similar tort to conversion committed when an individual "dispossess[es] another of chattel ... or us[es] or intermeddl[es] with a chattel in the possession of another." *Pestco, Inc. v. Associated Products, Inc.*, 880 A.2d 700, 708 (Pa. Super. 2005) (citing Restatement (Second) of Torts § 217); The elements of trespass to chattel are "are essentially the same" as those of the tort of conversion. *Rosemont Taxicab Co., Inc. v. Philadelphia Parking Authority*, 327 F.Supp.3d 803, 828 (E.D. Pa. 2018)  (citation omitted).

For the same reasons the Court discussed in permitting the Count for conversion of Plaintiff's personal property to proceed, the Court will allow the claim for trespass to chattels to proceed.

**COUNT IX-CONSTRUCTIVE EVICTION**

In Count IX, Plaintiff asserts a claim against Defendants 120 Northampton, LLC, Borko Milosev, Post Road Management, LLC for constructive eviction as follows:

423. The intentional failure to install return duct equipment to the HVAC system, loss of structural integrity to the floors of

the Plaintiff's leasehold due to unmitigated flood damage, and the missing brick and mortar from the exterior wall exposing the Plaintiff's leasehold to the elements, including rodents and insects, substantially interfered with the Plaintiff's use and enjoyment of the Leasehold.

424. On October 28th, 2022, the Plaintiff was locked out of the leasehold and possession was returned to the Defendants unlawfully, by the Northampton County Sheriff.

425. The Defendant's actions, including directing the Sheriff to execute against the leasehold, locking the door and returning possession to the Defendants, re-letting of the property without crediting the Plaintiff for the improvements, and currently attempting to sell the property, has, and continues to substantially interfere with the Plaintiff's use and enjoyment of the leasehold.

426. As a direct result of the Defendant's actions, the Plaintiff was effectively forced to vacate the Leasehold, as the interference deprived the Plaintiff of the beneficial use and enjoyment of the premises.

"Under Pennsylvania law, constructive eviction occurs when a landlord deprives a tenant of the beneficial enjoyment of all or part of the leased premises in such a way as to manifest an intention to hold the premises adversely to the tenant." *W.G. Nichols, Inc. v. Ferguson*, No. 03-824, 2004 WL 868222, at *16 (E.D. Pa. 2004) (citing *Kuriger v. Cramer*, 345 Pa.Super. 595, 498 A.2d 1331, 1338 (Pa. Super. 1985)). "[T]he interference by a landlord with the possession of his tenant or with the tenant's enjoyment of the demised premises must be of a substantial nature and so injurious to the tenant as to deprive him of the beneficial enjoyment of the demised premises, to which the tenant yields, abandoning possession within a reasonable time." *Lindstrom v. Pennswood Vill.*, 417 Pa.Super. 495, 612 A.2d 1048, 1052 n.2 (Pa. Super. 1992). "Possession must be given up entirely by the tenant in consequence of the landlord's

acts." *See* 49 Am.Jur.2d §§ 302, 303; *Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P.*, 126 A.3d 959, 968 (Pa. Super. 2015).

In this case, Plaintiff was lawfully, not constructively, evicted pursuant to a facially valid Writ of Possession. Therefore, Plaintiff's claim for constructive eviction is dismissed.

**COUNT X-UNJUST ENRICHMENT**

In Count X Plaintiff asserts a claim against Defendants Borko Milosev, 120 Northampton, LLC and Post Road Management, LLC for unjust enrichment.

Specifically, Plaintiff alleges:

> 249. After the commencement of the Lease term, the Plaintiff was responsible for majority of the improvements to the subject premises including but not limited to architectural plans, permits, fire suppression equipment including the installation of sprinkler heads and fire alarm pulls, all electrical components including outdoor lighting on the front façade, custom light fixtures, finished plumbing and plumbing fixtures, HVAC system, drywall, subway tiling backsplash, floor coverings and ceramic tiles, custom built quartz cash wrap and six foot (6ft) long quartz bar with custom cabinetry throughout bar area, custom built in benches, and custom built in merchandise shelving.

> 250. The Plaintiff, at all times relevant was entitled to possession of the subject premises, and all property contained within, including removable and permanent tenant improvements until December 31st, 2026.

> 251. As a direct and proximate result of the unlawful deprivation of the tenant's property, and the concerted actions of all Defendants, possession of the subject premises and of all the tenant's personal property and improvements was given to Defendants 120 Northampton, LLC, Post Road Management, LLC, and Borko Milosev.

> 252. Defendants 120 Northampton, LLC, Borko Milosev, and Post Road Management, LLC, sent via electronic and postal mail, a security deposit disposition of three-thousand dollars

($3,000), stating that they would be retaining the Plaintiffs deposit and would not be returning it after unlawfully taking possession of the premises with the joint involvement of the Northampton County Sheriff and Deputy.

253. Defendants 120 Northampton LLC, Borko Milosev, and Post Road Management, LLC, have since relet the premises to a new tenant, "Cake and Corolla", and have accepted increased rental payments on or before March 1st, 2023.

254. Defendants 120 Northampton, LLC, and Borko Milosev did not credit the judgment against the Plaintiff in the amount of one hundred sixteen thousand, two hundred forty-seven dollars and fifty-four cents ($116, 247.54), for rental payments they have received from "Cake and Corolla", nor for the value of the personal property and restaurant equipment in their possession.

255. Although the Defendants have the Plaintiff's property, they still maintain the Plaintiff owes Defendant 120 Northampton, LLC $4,798.09 in the underlying state-court action, although the Plaintiff's property is worth tens of thousands of dollars.

256. Defendants 120 Northampton, LLC, Borko Milosev, and Post Road Management, LLC, have unjustly enriched themselves, at the expense of the Plaintiff.

257. As aforementioned, the Defendants acted with intent, malice, recklessness, and egregious disregard for the Plaintiffs right

Under Pennsylvania law, unjust enrichment claims fall into one of two categories: (1) a quasi-contract theory of liability, in which case the unjust enrichment claim is brought as an alternative to a breach of contract claim; or (2) a theory based on unlawful or improper conduct established by an underlying claim, such as fraud, in which case the unjust enrichment claim is a companion to the underlying claim. *Dockery v. Heretick*, 2019 WL 2122988, at *21 (E.D. Pa. May 14, 2019) (citing *Zafarana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 561 (E.D. Pa. 2010)).

As to the first theory, an unjust enrichment claim based on a theory of quasi-contract may be pleaded as an alternative to a breach of contract claim. *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 (Pa. Super. Ct. 2009). "A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001). A quasi-contract theory is "typically invoked ... when [the] plaintiff seeks to recover from [the] defendant for a benefit conferred under an unconsummated or void contract." *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999).

However, in this case Plaintiff's unjust enrichment claim fails as a matter of law because her allegations are dependent on the parties' written lease agreement. *See Benefit Tr. Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985) ("The Supreme Court of Pennsylvania has concluded that 'the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract.' " (quoting *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443, 448 (Pa. 1969))).

**COUNT XI-CONSTRUCTIVE TRUST**

In Count XI, Plaintiff asserts a claim against Defendants 120 Northampton, LLC, Post Road Management, LLC and Borko Milosev for constructive trust. However, Pennsylvania does not recognize a separate cause of action for constructive trust. Instead, constructive trust is an equitable remedy, usually for claims of unjust enrichment. *Chaleplis v. Karloutsos*, 579 F. Supp. 3d 685, 706 (E.D. Pa. 2022)

citing *Buchanan v. Brentwood Fed. Sav. and Loan Ass'n*, 457 Pa. 135, 320 A.2d 117, 126 (1974) ("A constructive trust ... is not really a trust at all but rather an equitable remedy."); *Brock & Co., Inc. v. Kings Row Assocs.*, 2004 WL 2624864, at *5 (E.D. Pa. Nov. 17, 2004) (noting that "a constructive trust is an equitable remedy and not a separate, specific cause of action"). As the Court has already dismissed Plaintiff's unjust enrichment claim, Count XI will be dismissed.

## COUNT XII-EQUITABLE LIEN

Count XII asserts a claim against Defendants, 120 Northampton, LLC, Post Road Management, LLC and Borko Milosev for equitable lien. Like a constructive trust, an equitable lien under Pennsylvania law is an equitable remedy designed to provide redress in cases in which the obligor's retention of certain property or the proceeds thereof would constitute unjust enrichment. As the Court has already dismissed Plaintiff's claim for unjust enrichment, Count XII will be dismissed as well.

## COUNT XIII-INTENIONAL INFLICTION OF EMOTIONAL DISTRESS

In Count XIII, Plaintiff asserts a claim against all Defendants for intentional infliction of emotional distress as follows:

> 275. The Defendant's conduct in directing the unlawful execution against the Plaintiff's property and specifically attempting to sell the Leasehold without addressing the Plaintiff's interest is intentional, extreme, outrageous, and beyond all possible bounds of decency.
>
> 276. The Defendant's actions were intentional and done with reckless disregard of the high probability that such conduct would cause the Plaintiff severe emotional distress.
>
> 277. As a direct and proximate result of the Defendant's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress, including but not limited to anxiety, depression, emotional pain, and suffering.

278. The Plaintiff's physical distress includes nightmares, night sweats, chest pains, paranoia, and sleeplessness.

279. Plaintiff's emotional distress has been exacerbated by having to navigate the complexities of litigation to defend herself from the void ab initio unlawful judgment entered against her, the inability to find an uncompromised attorney to represent her interests, and the necessity of drafting the civil rights complaint herself.

280. The emotional distress suffered by the Plaintiff has been so severe that the Plaintiff requires the attention of a psychologist and ongoing emotional support to cope with the reality of the extensive corruption that has transpired.

A claim for intentional infliction of emotional distress requires proof that: (1) the defendant's conduct was extreme and outrageous; (2) the conduct caused the plaintiff severe emotional distress; and (3) the defendant acted intending to cause such distress or with knowledge that same was "substantially certain" to occur. *Brown v. Muhlenberg Township*, 269 F.3d 205, 217-18 (3d Cir. 2001) (quoting Restatement (Second) of Torts § 46, cmt. d). Whether conduct could reasonably be regarded as extreme and outrageous is a threshold inquiry for the court's determination. *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F.Supp.3d 412, 430 (M.D. Pa. 2014) (citing *Reimer v. Tien*, 356 Pa.Super. 192, 514 A.2d 566, 569 (1986) ). The Supreme Court of Pennsylvania has cited approvingly the Superior Court's requirement that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 754 (1998) (alteration in original) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 366 Pa.Super. 551, 531 A.2d 1122, 1125 (1987) ).

The only allegation Plaintiff makes with respect any extreme and outrageous conduct is that "[t]he Defendant's conduct in directing the unlawful execution against the Plaintiff's property and specifically attempting to sell the Leasehold without addressing the Plaintiff's interest is intentional, extreme, outrageous, and beyond all possible bounds of decency." ECF 69 at ¶ 275. The Court finds as a matter of law that such conduct, accepted as true, cannot be plausibly characterized as extreme and outrageous under Pennsylvania law. Accordingly, Plaintiff's claim for intentional infliction of emotional distress is dismissed.

An appropriate Order follows.